A. E. Carter *v.* The State.

1. Continuance — Evidence. — In a murder case, the defence asked a continuance in order to obtain proof of threats by the deceased against the defendant, but there was no pretence that the deceased, when killed by the defendant, manifested any intent to execute the threats, or any other hostile purpose towards the defendant. *Held*, that the desired evidence was immaterial, and the continuance properly refused.

2. Jury Law. — If the defendant got rid of an objectionable juror by challenging him peremptorily, and a full panel was obtained without the defence exhausting its peremptory challenges, the fact that a challenge of the juror for cause was overruled before he was challenged peremptorily can constitute no material error.

3. Murder in the First Degree. — See facts sufficient to sustain a conviction for murder in the first degree.

Appeal from the District Court of Walker. Tried below before the Hon. W. D. Wood.

This appeal is from the capital conviction of the appellant for the murder of W. K. Spaulding, on July 25, 1879. The

evidence is unusually concise, consistent, and conclusive. The opinion sets forth the testimony of the principal witness for the State, who was a lady, who saw the defendant, after a friendly talk with the deceased at the latter's house, induce him to step out to the front gate, and there, with a gun previously put there for the purpose, shoot him twice without the slightest provocation. The defendant fled, and the deceased died the next day. Mrs. Spaulding, the wife of the deceased, was at home, and saw him and the defendant engaged in friendly conversation for an hour or more. She went out into the back yard, and hearing two shots from the front of the house, ran to the gate and there found her husband struck down, with one gunshot in the back and another in the hip. The defendant had disappeared.

D. W. Carter, a justice of the peace, being sent for, reached the house of the deceased within a few hours after the latter was shot. The deceased said he was going to die, and had no hope of recovery. He was perfectly rational, and without persuasion or leading questions made a voluntary statement to the witness. He said : '' They have got me this time ; I am going to die. Carter shot me ; he came to my house a little after dark to-night, and talked to me about an hour. He was friendly with me ; told me that he had called to see me ; that he wanted to leave this d—d country, and did not want me to have him summoned as a witness in my case. I told him all right, I would not have him summoned. He asked me if we had not always been friendly. I told him yes, and that I wanted to be friendly with him. After talking for awhile, he started to leave. He asked me to go to the gate with him. I did so. When we got out of the gate I bade him good-night, and started back to the house. He then shot me twice. He shot me for nothing.''

It further appears by the testimony of this witness that the deceased and one James Dean had had a difficulty about three days before the murder, and that it was with reference

thereto that the defendant requested the deceased not to make him a witness.

George Gardner, another witness for the State, was a near neighbor of the deceased, and went to the latter's house on hearing of the shooting. The deceased made a statement to him to the same effect, and almost in the same words, as that testified to by the justice of the peace. According to this witness, however, the deceased said that the defendant, just as he fired upon him, said, "G—d d—n you, I have got you now."

Ed Estill, for the State, testified that he saw the defendant the night before Spaulding was shot. Defendant told witness that he would kill Spaulding if the latter came to the mill, — a reference, doubtless, to a saw-mill in which James Dean and the defendant were employees. On cross-examination, the witness stated that the defendant further told him that Spaulding had threatened to take his (the defendant's) life.

John Clark, for the State, testified that he lived close by Dean's house, and was at Dean's about nine o'clock the night Spaulding was killed, when the defendant came to Dean's. Defendant was riding a horse generally understood to be Dean's, and as he came up he said "Hell was to pay," and that Spaulding never would jump upon anybody else. After talking a few minutes the defendant rode off, and was not seen in that neighborhood any more.

Another witness saw the defendant as the latter was on his way out of the country. Defendant said he was in trouble, and had killed a man named Spaulding.

The defendant was pursued to, and overtaken in, Grayson County, nearly three hundred miles from where the murder was committed. The defence introduced no evidence, but the State put upon the stand two of the witnesses named in the defendant's application for a continuance. They stated that they had never heard the deceased make any threat against the defendant.

No brief for the appellant has reached the reporters.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, P. J.   The indictment in this case charges appellant with the murder of one W. K. Spaulding, in Walker County, on the twenty-fifth day of July, A. D. 1879.   On his trial he was found guilty of murder of the first degree, and his punishment affixed at death by hanging.

No error was committed by the court in overruling defendant's application for a continuance.   The evidence claimed to be desired from the absent witness was as to threats made by the deceased against the defendant's life, but it was not stated in the application that the witnesses, or any of them, in addition to the pretended threats, could or would prove that the deceased, at the time he was killed, by some act then done, manifested an intention to execute the threats so made.   Without such proof, the evidence would amount to nothing, and under the law would not be regarded as any justification whatsoever.   Penal Code, art. 608.   So far as the statement of what the witnesses would prove, as set out in the application, therefore, it was wholly immaterial and insufficient.   Besides this patent defect in the motion, it was made to appear that four of the witnesses therein mentioned were actually present at the trial, and two testified, denying any knowledge of such threats, and the other two were not called and examined by the defendant.

Nor was any error committed in admitting deceased's dying declarations, as is complained of in defendant's second and third bills of exception.   A sufficient predicate for their admission, under the statute, was established most fully.   Code Cr. Proc., art. 748; *Lister* v. *The State*, 1 Texas Ct. App. 739; *Roberts* v. *The State*, 5 Texas Ct. App. 141.

As to the fourth and last bill of exception, taken to the

refusal of the court to stand the juror Mooring aside upon challenge for cause, it is sufficient to say that defendant got rid of him by a peremptory challenge, and the jury was finally completed without defendant's having exhausted the peremptory challenges allowed him by law. In such state of case it has always been held that no objection would avail, since no injury was suffered. *Grissom* v. *The State,* decided at the present term, *post,* p. 386.

The charge of the court was much more favorable to the accused than, in our opinion, he was entitled to under the evidence; for the court gave him the benefit of a charge upon murder in the second degree, when under the evidence the homicide was and could be nothing else than a most aggravated, unprovoked, and dastardly assassination. In support of this declaration we need only reproduce the evidence of Mrs. Frances Conkling, who was the only eye-witness to the shooting, and whose evidence bears every impress of truth and fairness. She says: "I am sister-in-law of W. K. Spaulding, and was living with him on the 24th day of July, 1879. About dark on that day the accused came to Mr. Spaulding's house. The moon was shining brightly. He talked with Mr. Spaulding in a friendly manner. They were sitting in the entry to the house. After the accused had been there about an hour, he asked Mr. Spaulding to go with him to the gate and keep the dog off of him. When the accused got out of the gate, and Mr. Spaulding started back to the house, the accused picked up a gun that was lying against a stump that was near the gate, and, turning round, said to Spaulding, ' God damn you, I have got you now,' and fired one barrel of the gun at Spaulding. Spaulding fell, and was trying to get up when accused shot him again. Both shots took effect, — one in the back, a little to the left of the backbone, and the other in the hip. The two shots were fired one right after the other. The accused then ran down the road. Mr. Spaulding died the next day, about ten o'clock in the morning. I was standing in the

gallery, about eight yards from the gate. I could see the accused plainly when he shot the deceased. ＊ ＊ ＊ The moon was so bright that you could see a man a hundred yards off.''

This testimony is fully corroborated by the dying declarations, and in certain portions by the other evidence as far as it went. Defendant offered no evidence.

Upon this evidence there can be no possible question of defendant's guilt, or of the character of the crime which he has committed. Conscious of his own guilt, he immediately fled, and was upon the verge of going into the Indian Territory when his pursuers overtook and apprehended him.

There is not a single mitigating circumstance in the case as shown by the record. The murder was a cool, deliberate, wanton assassination, without even a motive being disclosed, unless we presume that he did it for hire, which, if true, would only, if possible, aggravate his crime.

There is no error in the judgment, and it is in all things affirmed.

*Affirmed.*